O’NIELL, Chief Justice. ■
 

 This suit was brought to recover the value of a quantity of oil which the plaintiff was entitled to, as royalty, under three contracts of lease. The only matter in dispute is the price or value which the plaintiff, as lessor, was entitled to; and ■that depends upon whether the defendant, lessee, was justified, by the terms of the contracts, in refusing to deliver the plaintiff’s royalty oil into tank cars furnished by the plaintiff, and in insisting that the royalty oil should be delivered into tanks to be provided by the lessor, near the wells. The district court, adopting the lessor’s construction-^-which was the liberal construction — of the contracts, held that the lessor had the right to have the royalty oil delivered into tank cars. The court therefore gave judgment for the plaintiff, for the market value of the oil. The defendant has appealed from the decision. , . ,
 

 Under one of the leases the royalty is one-eighth and under the two others it is one-fourth of the oil produced. In other respects the stipulations for the delivery of the royalty are the same, viz.:
 

 “The Corporation [meaning the Louisiana Oil Refining Corporation] shall deliver to the credit of the Company [meaning the Tremont Lumber Company], as royalty, free of cost, in the pipe line or pipe lines with which the [Louisiana Oil Refining] Corporation may connect its wells, or in the tanks by the [Tremont Lumber]' Company provided, at the [Tremont Lumber] Company’s option, the equal one-fourth (J4) part of all oil produced and saved from the leased premises,” etc.
 

 The leases are in the Tullos field. They were made in 1925 and 1926, and the lessee has been producing oil from them ever since 1926. There was never any dispute about the price which the lessee paid for the royalty oil which the lessor did not
 
 *457
 
 take in kind, ■ except for the oil produced in May, June, July, August, and September, 1933. It is the price or value of the oil produced during those months only that is in pontest in this suit. At that time there were only two buyers of oil in the Tullos field, namely, the lessee, and a corporation styled H. L. Hunt, Inc. In the beginning of May, 1933, the price posted by both buyers was the same; but, from- the 6th day of May until some time in September, the price posted by the lessee was much lower than that posted by H. L. Hunt, Inc. On the 7th or 8th of May, the lessor notified the lessee that the lessor would not accept the price posted by the lessee, but would take the royalty oil in kind, and would spot at the loading rack a number of Sinclair tank cars which the lessor had rented for the purpose" of receiving its royalty oil. The lessee refused to deliver the royalty oil into tank cars, but offered to deliver it into tanks, to be provided by the .lessor or by any purchaser of the oil, near the oil wells. The lessee stood upon the letter of the contract,' and insisted that its obligation to deliver the royalty oil into tanks, to be provided by the lessor, did not give the lessor the right to have the oil delivered into tank cars. The lessor then notified the lessee that if the latter retained the royalty oil, by running it into its own tank cars, the lessor would hold the lessee liable for the market price of the oil — meaning the price which H. L. Hunt, Inc., or any other buyer would pay for the oil. The lessee thereafter retained the royalty oil, by running it into the tank cars in which it shipped its own oil; and the lessee made remittance by checks to the lessor at the prices posted by the lessee. The checks being for sums less than H. L. Hunt, Inc., would have paid, the lessor returned the checks. Near the end of September, and thereafter, the price posted by the lessee from time to ■ time was as high as the price posted by H.: L. Hunt, Inc.; hence the lessor accepted • the remittances.
 

 Our opinion is that the judge of the district court was right in adopting the liberal construction which the lessor ■ put upon the contracts. There was no stipulation as to where the tanks which w.ere to be provided by the lessor should • be located. Ordinarily, it would be assumed that the tanks should be located near the oil wells; but the only reason for so assuming would be that the most convenient place for the lessee to deliver the royalty oil would be somewhere near the wells. It was not so in this instance, however, because the lessee was under contract with the lessor to ship all of the lessee’s oil over the Tremont & Gulf Railroad, and, in order to do that, it was nec- ■ essary for the lessee to construct and' maintain a loading rack at the railroad; and the lessee did so construct and maintain a loading rack on the railroad line, at a place' called Denkman. The loading rack is about three-fourths of a mile from the nearest well and about three and a half miles from the furthest well. But the testimony shows that it was less expensive and more convenient for the lessee to deliver the lessor’s royalty oil
 
 *459
 
 into tank cars spotted at Denkman than it would have been to deliver the oil into tanks nearer the wells. It appears also that the oil had to be treated by the lessee before being delivered, and that the place and equipment for the treating was somewhere on the line towards Denkman. That would have added to the inconvenience of delivering the lessor’s royalty oil into tanks near the wells, instead of delivering it into tank cars, where the lessee delivered its own oil.
 

 It seems that the parties to the contracts, before the dispute arose over the price of the oil, gave them the liberal construction which the judge of the district court has adopted. On occasions when the lessor bought oil for its own use for fuel, from the lessee — which'was in effect the same as if the lessor had taken that much of its royalty in kind — the oil was delivered into tank cars at Denkman, and the lessee added to the posted price for the oil a stipulated sum per barrel, as rental for the tank cars.
 

 Of course, if the location of the tanks to be provided by the lessor for receiving its royalty oil in kind had been stipulated in the contract, the lessee would have been justified in refusing to deliver the royalty oil into tanks or tank cars located elsewhere. But there is no such stipulation in the contract. The testimony shows that it would be very expensive for the lessor, and not convenient to the lessee, to construct receiving tanks near the oil wells, and to have the royalty oil delivered there, instead of having it delivered at the place where the lessee delivers its own oil into tank cars. It is in cases like this that the equity spoken of in articles 1964 and 1965 of the Civil Code — announcing the golden rule and the maxim against unjust enrichment — serves its purpose.
 

 The judgment is affirmed.